**Ross JENKINS and Solomon Lacy, Plaintiffs,**

v.

**W. Hardy McCOLLUM, Individually and as Probate Judge and Chairman of the County Commission of Tuscaloosa County, Alabama, Charles H. Allen, Individually and as a member of the Tuscaloosa County Commission, Woodrow W. Boyd, Individually and as a member of the Tuscaloosa County Commission, Bobby Miller, Individually and as a member of the Tuscaloosa County Commission, Tuscaloosa County, Alabama and the Tuscaloosa County Commission, Defendants.**

Civ. A. No. 77–G–0633–W.

United States District Court,
N. D. Alabama, W. D.

March 7, 1978.

Alberta Murphy and Stanley Jay Murphy, Murphy & Murphy, Tuscaloosa, Ala., for plaintiffs.

T. Walter Oliver, Jr., Ray, Oliver & Ward, Tuscaloosa, Ala., for defendants.

## MEMORANDUM OPINION

GUIN, District Judge.

The plaintiffs are both black United States citizens who were unsuccessful applicants for the position of Manpower Director of the federally funded Tuscaloosa Comprehensive Employment and Training Act (CETA) program. Defendants are Tuscaloosa County and the Judge of Probate and three Commissioners of that county, the four of whom constitute the County Commission. Tuscaloosa County is prime sponsor of the CETA program in question and the members of the County Commission are responsible for the overall administration of that program, including employment practices.

The position of Manpower Director became vacant and the defendants solicited applicants for that position as an equal opportunity employer by means of newspaper advertisements. On two prior occasions applicants had been solicited by a prior County Commission, at which times a merit selection plan was used whereby the Civil Service Commission of the County of Tuscaloosa examined the applicants with a written three-hour examination prepared by the University of Alabama and, then based in part upon examination scores (requiring at least a grade of 60 as a passing grade) and in part upon interviews conducted by the Civil Service Commission, certified a list of three eligibles to the County Commission. When this process was first used by the preceding County Commission (no members of which are members of the present Commission), the Commission was unable to agree on any person named on the list. That list included one white male, one white female, and one black male. At least one person on the list resided outside Tuscaloosa County. It is evident that the Civil Service Commission did not show any sexist, racist or local bias in its certification of a list of eligibles.

The old County Commission, that is, the one preceding the present one, then asked the Civil Service Commission for another list. It received a list of three different names and was still unable to agree on any name on the list. It then adopted a resolution that the selection would not be made by a merit system. The present County Commission took office with the Manpower Director position still vacant, and did not rescind the resolution which abolished the merit system requirement for selection. It proceeded to advertise again for applicants and did not use either the Civil Service Commission or any other system of merit selection in making its choice other than to take applications and interview the applicants. The interviews were brief and no background investigation was made and no references were checked. Sixteen applicants were interviewed in a single afternoon, with the list being narrowed to three names and those three being interviewed

again the following morning, after which the Commission immediately made its choice.

There were 18 applications in all. The two who were not interviewed are these plaintiffs. They were the only black applicants and the only applicants whose applications showed an address outside Tuscaloosa County. The plaintiffs claim that they have been discriminated against by reason of race and that they have also been refused the opportunity to be considered for this employment because of their residence outside Tuscaloosa County, which they allege to be a deprivation of one of the privileges of a citizen of the United States, the privilege to travel freely. They assert that a nonresident of Tuscaloosa County has a constitutional right to apply for this public employment and to be considered therefor.

The defendants admit that they were aware of the fact that these applicants were black, and that they were the only applicants not interviewed. In fact, they admit that they made a conscious decision not to interview them. However, they assert that their decision was made because of a desire to employ a local person as Manpower Director and not by reason of race. They assert that they in good faith believed that they had the right to fill the job without using a merit selection procedure or system, and the evidence shows that they had been so advised by one or more officials of the United States government, although incorrectly. The defendants also assert that they had been advised by the advisory council of the local program, or at least its executive committee, to hire a local person, and that after the process of advertisement and receipt of applications was complete they made a decision that they would interview and consider only Tuscaloosa County residents. They admit that they had by a form letter acknowledged receipt of the applications of plaintiffs and promised them an interview, which promise was not kept. They admit that they would not have considered anyone's application who had not been a resident of Tuscaloosa County for approximately a year. None of these decisions was documented in the form of a resolution or in any other way, but that such a policy was adopted by the members of the Commission is admitted.

It is undisputed that all 16 applicants who were interviewed were white and were residents of Tuscaloosa County.

The court construes the case to arise under the fifth and fourteenth amendments, the privileges and immunities clause of the United States Constitution, and Sections 1981 and 1983 of Title 42 of the United States Code. Subject matter jurisdiction exists under 28 U.S.C. § 1331 and § 1343(3), (4). Personal jurisdiction and venue are not contested.

■ The court took much evidence on the issue of racial discrimination. This issue was hotly contested. There is evidence in the record from which a court could decide this issue either way. Because there is much evidence in the record of the good faith of the defendants in their belief that they could hire locally and that it was their good faith belief that it was good judgment to do so, and it being uncontroverted that the executive committee of the advisory council did strongly recommend local hiring for this position (even though it was not really their function to make such a recommendation), the court, having heard the witnesses testify, is of the opinion that the defendants were sincere in their determination that they had the right to limit their consideration to applicants living within the county and that it would be beneficial to the program for them to do so. This does not mean that the court agrees with that decision, only that the court considers that the "qualified immunity" doctrine announced in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), applies under the evidence of this case. The defendants did have reasonable grounds for the belief formed at the time and in the light of all the circumstances, especially considering the fact that none of them (including the Judge of Probate) is a lawyer, and did have a good faith belief that they had the right to do what they did. The court has concluded from all the evidence

that the defendants acted sincerely and with the belief that they were doing right. There has been no testimony that these defendants acted maliciously or that they took action with malicious intent to cause a deprivation of constitutional rights. Their good faith actions would entitle them to the immunity spoken of in *Scheuer.* These defendants are therefore not liable for damages under 42 U.S.C. § 1983.

However, since a public policy in violation of the privileges and immunities clause of the Constitution was adopted and became official county policy, and since this policy was in contravention of the right plaintiffs had to enter into contracts, and since they did suffer damages because of the denial of this right, they are entitled to recover damages from Tuscaloosa County under 42 U.S.C. § 1981. Plaintiffs are black and were the only people of their race denied their constitutional rights in connection with this job application. The deprivation was intentional, even if in good faith. It was unconstitutional. A long line of cases supports the proposition that the denial of public rights, including the right to public employment, to those not resident for a prescribed period of time prior to their application within the state or other appropriate political or geographical area is an undue restriction on the right of unobstructed travel of a citizen of the United States, which is said by the courts to be one of the privileges and immunities of a citizen of the United States, which the Constitution guarantees against impairment. *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1971); *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974). *Justice v. Manzagol,* 11 E.P.D. ¶ 10758 (D. N.M., Jan. 20, 1976).

The cases appear to have involved statutes which require a period of residency of one year. Curiously, although no statute or ordinance or resolution was ever passed, and although the members of the Tuscaloosa County Commission did not at that time form an opinion as to what the prescribed period of prior residence would be, all those who testified admitted on the stand that they would have considered prior residence of about one year to be essential. A majority of the Commission so testified. It is this court's opinion that any prior requirement of residence would violate this constitutionally protected privilege of a citizen of the United States. It is not necessary to this court's decision that the constitutional rights of plaintiffs have been violated to decide how much of a prior period of residence is constitutionally permissible, but it is necessary to the fashioning of relief because it is the intention of this court to declare the position in question vacated and to require that it be filled by a process of merit selection, and among other things to require that applications be considered from those outside Tuscaloosa County, thus holding that no prior residence can be required. This court does recognize that the County Commission may, if it desires, require that the holder of the office, once appointed to it, become a resident of Tuscaloosa County. *McCarthy v. Philadelphia Civil Service Commission,* 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976).

The position must be declared vacated and refilled for more than one reason. First, these plaintiffs received no consideration at all, and the court finds from the evidence that they are qualified to fill the position and must be given equal consideration with white applicants and with applicants who presently live in Tuscaloosa County. This is not to say that the County Commission may not consider familiarity with Tuscaloosa County by reason of present or prior residence in determining which applicant is best qualified. It is to say only that the Commission may not arbitrarily exclude those who presently live outside the borders of Tuscaloosa County. It was interesting to the court to hear one of the defendants, Judge McCollum, the incumbent Judge of Probate of the county, testify that in his opinion, having heard the evidence in the case, he now would agree that one of the plaintiffs should have been given serious consideration for the job, since he was now of the opinion that the

plaintiff in question did have so many local contacts and so much local familiarity that the fact that he presently lives outside the state would not disqualify him in Judge McCollum's mind. With that assessment the court agrees. The other plaintiff has less local familiarity and fewer local contacts, but he is not without local contacts. and not without local familiarity, and is possessed of a high degree of ability and a large amount of experience in the field covered by the job in question. In fact, both applicants are well experienced in that field. They both deserve consideration for the job.

Since plaintiffs have been denied that consideration which is their constitutional due, the job must be declared vacant and these plaintiffs given the same opportunity to be fairly considered as all other applicants.

■ But there is another reason the job must be declared vacant. It was not filled by a process of merit selection, as required by the duly adopted and promulgated regulations of the Department of Health, Education and Welfare. Title 45 C.F.R. § 70.2 contains the only exceptions. An exception exists for the executive head of a state agency. This is a county agency. Defendants rely upon this particular section of the Code of Federal Regulations, but they misplace their reliance.

One of the reasons that the court declines to find an intentional violation of the rights of plaintiffs is that defendants relied on instructions issued by the Department of Labor for preparation of a plan as required by 29 C.F.R. § 98.14(b). These instructions indicate that "depending upon the size and complexity of the organization, in general the following exemptions are acceptable: the program director, one deputy director (when warranted by size), one secretary to each of the above officials, attorneys serving as legal counsel, and unskilled laborers." This language tracks the exemption in 45 C.F.R. § 70.2; however, it fails to note the requirement of § 70.2 that the exempted agency head be over a state agency. Section 70.2 specifically states that "(t)hese

standards are applicable to all personnel, both state and local, except those exempted in this section, engaged in the administration of grant-in-aid programs under Federal laws and regulations requiring the establishment and maintenance of personnel standards on a merit basis," and § 98.14, rather than making provision for avoiding the requirements of 45 C.F.R. Part 70, specifically refers to those requirements. It is clear that the instructions issued by the Department of Labor and relied on by the defendants in this case cannot be construed to authorize the use of nonmerit-selection procedures for the position of Director for the Tuscaloosa County, Alabama, CETA program.

The defendants are required by the terms of the grant agreement between them and the Department of Labor and by the United States Department of Labor Regulations to conduct hiring for administrative positions in the CETA program in a fashion consistent with merit system hiring principles. Neither the regulations nor the grant agreement require the use of any specific merit system. The regulations anticipate that most municipal or governmental prime sponsors will have access to or will maintain a civil service type selection process which would satisfy this requirement. Such a civil service system does exist in Tuscaloosa County. In fact, the Civil Service Board of Tuscaloosa County has, as mentioned above, twice certified a list of three eligibles to the County Commission for this very job. The evidence shows that it has done so fairly and in a completely color-blind and otherwise totally nondiscriminatory manner. The evidence further shows that the test it administers is a valid test. The testimony of one of the psychological experts called by the plaintiffs, when examined by the court, was that the test appeared to him not to be racially biased. The chairman of the Civil Service Commission served for six months without pay as a public service in the very job in question. He knows what is required of the Manpower Director. He is also intimately familiar with the contents of the test. He testified that the test does, except

perhaps for 10 out of the 170 total questions, validly and fairly inquire into the knowledge and personal characteristics required of an occupant of the office of Manpower Director. Applicants are given three hours to complete the test. The court has examined the test questions and based upon this examination and upon the testimony heard in open court determines that the test has been validated by the criterion validation method and may be properly used in the course of merit selection of a list of eligibles for this position. The court has further determined that this position should be filled in the very way that the old County Commission started to fill it, through the Civil Service Board of Tuscaloosa County. The court will therefore order that the job again be advertised, that the Civil Service Board administer the test and interview the applicants who score well enough to warrant an interview in the collective judgment of that Board, all without any discrimination against nonresidents of Tuscaloosa County or against any person by reason of race or otherwise. This court has no reason to believe that the Civil Service Board would discriminate in this manner. In fact, the Board has shown by its actions in the past that it would not. The only reason this language will be in the order is that the court feels the law requires it.

The Civil Service Board will receive a mandate by order of this court to make a merit selection of three persons, in the manner above described, using the same written test it used for the same job in the past, and submit that list of three eligibles in alphabetical order to the Tuscaloosa County Commission. The County Commission will have 30 days after receipt of the list of names to choose one of those names to fill the position. If it does not act within that period of time this court will make the choice.

If the Commission fulfills its right and obligation under the law to make the choice, the court will require that written reasons be given this court within five days after the choice is actually made both for the choice of the successful applicant and for the rejection of the two who are unsuc-

cessful and who are included on the list of three eligibles certified by the Civil Service Board.

Neither the Civil Service Board nor the County Commission will give any weight or credit for prior service in the office of Manpower Director if the incumbent is on the eligible list.

The court will enjoin the Civil Service Board from the prior practice of allowing any applicant to take the test more than once. If the Civil Service Board includes upon its eligible list any selectee whose test score was below 70 percent, the court will require that the Civil Service Board forward to the court, in the same mail by which it forwards the eligible list to the County Commission, a written justification for the inclusion of that name. The County Commission may not select a person whose score was below 70 percent without the prior approval of this court, even though such a person is on the eligible list and even though the prior practice of the Civil Service Board has been to consider 60 percent as a passing grade. The Civil Service Board will forward to this court a duplicate copy of the list of eligibles by the same mail by which the list is mailed to the County Commission.

The court sees no need to require advertisement of this job opening more widely than as last advertised, since the last advertisement produced a total of 18 applications. The court reaches this conclusion partly because it knows that this judgment will be given wide publicity by the media. The court notes that these two plaintiffs both became informed of the job opening by reason of advertisements in The Tuscaloosa News even though one of them resides in Michigan and the other in Connecticut. The court will, however, require that the existence of the vacancy be advertised once a week for three weeks in The Tuscaloosa News and in every other newspaper of general circulation in Tuscaloosa County.

The court will award plaintiffs reasonable attorneys' fees and their costs of court, and also will award them as damages their actual expenses in making the applications which were not considered and in pursuing

674

their constitutional rights of which they were deprived, including their expenses of coming to Tuscaloosa for the trial of this case. This court is aware that the expense of attending court is not normally recoverable as damages. There is one Fifth Circuit decision which indicates such might be recoverable as court costs. *Hodge v. Seiler*, 558 F.2d 284 (5th Cir. 1977). This court is not in agreement with the rationale of that dictum. It is more appropriate in equity and in good conscience to call these expenses damages rather than costs. While such damages are not usually recoverable, they go to the heart of plaintiffs' complaint under the peculiar facts of this case and will be included in the court's award. The plaintiff Jenkins is awarded the total sum of $784.00, and the plaintiff Lacy is awarded the total sum of $200.00. The court will conduct a post-judgment inquiry into the attorneys' fees which should be awarded the attorneys for the plaintiffs.

A separate judgment will be entered by the court awarding the damages and injunctive relief called for by this memorandum opinion.